## NEW ORLEANS & NORTHEASTERN R. CO. v. FRANKLIN.

### Civ. A. No. 10170.

United States District Court
D. New Jersey.
April 19, 1951.

Minard, Cooper, Gaffey & Webb, Newark, N. J., for plaintiff, by John J. Gaffey, and George Addison Hobart, Newark, N. J.

George R. Sommer, Newark, N. J., for defendant.

FAKE, Judge.

This is a suit by the plaintiff, New Orleans and Northeastern Railroad Company, against the defendant, Ralph Franklin, shipper, for freight in the amount of $1,083.82, allegedly incurred by the transporting of a car by plaintiff over its road and others from Higgins, Louisiana to Atlanta, Georgia, and thence, to New Orleans, Louisiana. Defendant denies indebtedness. Jurisdiction arises under 28 U.S.C.A. § 1337.

A stipulation of facts has been filed by counsel, and the case was submitted for decision on the record, the stipulation, and depositions.

The facts are briefly these:

A bill of lading or shipping order was presented to the Louisville and Nashville Railroad Company at Higgins, Louisiana, made out by the defendant, and accepted by said railroad covering the transportation of car, ATSF 150101, containing paint and scrap lead over the Louisville and Nashville, Southern delivering carrier, from Higgins, Louisiana to Atlanta, Georgia on or about September 28, 1945. As directed, therein, said car left Higgins and arrived at the Gentilly yard at New Orleans on September 29, 1945, at 1:50 p. m., and left there bound for Atlanta on October 2, 1945 at 9:20 a. m. On October 2, 1945, an exchange of telegrams took place between defendant and S. W. Bell, freight agent of the Louisville and Nashville Railroad Company at New Orleans. The first telegram was received by Bell between 4:00 and 4:30 p. m., on October 2, 1945, more than 6 hours after the car in question had left the Gentilly yard there en route for Atlanta. It stated: "Ship car * * * held for our account to Southern Scrap Material Co., New Orleans."

The telegram didn't identify the car in question. Bell wired to defendant to identify the car almost immediately upon receipt of defendant's telegram. On October 3, 1945, defendant wired Bell the car number and Bell wired back advising defendant the car had been forwarded October 2, at 9:20 a. m., to Atlanta, Georgia. Defendant then wired Bell stating they had given him different instructions and asking when he received their wire, Bell replied: "Retel Received after Four Peem." Defendant then wired Bell stating: "Having received our wire on second before your closing hour, you should have made attempt to stop Sante Fe 150101 from going forward to Atlanta." This telegram was received by Bell on October 4, 1945 at 1:30 p. m.

The Gerstle deposition traces the course of the car on its trip until it was delivered to the Southern Railway at Birmingham, Alabama, at 5:00 p. m., on October 3rd. The Umhau deposition continues the trip after delivery to the Southern Railway and states the car in question arrived at Atlanta, Georgia, at 1:10 p. m., on October 4, 1945.

The only other pertinent telegram was sent by defendant on October 3, 1945 to Freight Agent, Southern Railroad Company and received by him apparently at 4:07 p. m., asking him to divert the car to Southern Scrap Material Company at

New Orleans, Louisiana. He replied stating it was too late to divert the car at that time, and it was later reshipped to New Orleans upon its arrival at Atlanta, pursuant to defendant's directions.

In addition, defendant claims, Hart, its manager had a telephone conversation with Bell, the freight agent at New Orleans, asking Bell to hold the car until a new deal was worked out; at which time Hart was to notify Bell where the car was to be shipped.

The issue to be decided by this court is what amount of money is due plaintiff as freight charges, which makes it necessary to decide if and when a valid diversion order was given the railroad diverting the car to a new destination.

It is my opinion that the entire amount sought in the complaint is due plaintiff because to be valid, a diversion order would have to follow the procedure set forth in the tariff governing diversions, Item 160–A on page 2 of Supplement 23, to I.C.C. No. 901, which states: "(c) d— On a 'straight' bill of lading consignment, the original bill of lading should be surrendered or other proof of ownership established."

Item 190, page 10 of Freight Tariff 161–T provides: "All charges against the property, whether accrued or accruing under these rules or otherwise, must be paid, or guaranteed to the satisfaction of the carrier, before car is diverted or reconsigned."

The court finds the following ultimate and material facts:

1. No telephone conversations took place between defendant's agent, Hart, and plaintiff's freight agent, S. W. Bell.

2. S. W. Bell did not promise defendant's agent, Hart, to hold car ATSF 150101 to await further orders from defendant.

3. No effective diversion or reconsignment order was made by defendant to plaintiff, railroad or delivering railroads.

4. Plaintiff's agent and employees exercised due diligence in all their dealing with defendant, or defendant's agents, regarding the car in controversy.

5. Plaintiff or its delivering carrier reshipped car ATSF 150101 as soon as it possibly could exercising due diligence.

6. Defendant did not effectively communicate to plaintiff its desire to divert the shipment to a new destination, other than that set forth in the bill of lading, before the time the car in question through the exercise of due diligence could have been cut out or diverted prior to reaching its initial destination, at Atlanta, nor did it follow the procedure set forth in the tariff governing such a diversion or reconsignment.

### Conclusion of Law

1. Plaintiff is entitled to judgment in the sum of $1,083.82, together with interest and costs.